```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**REGINA M. GRENAUER,**

        **Plaintiff,**

   vs.                                    Civil Action 2:15-cv-555
                                                      Chief Judge Sargus
                                                      Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits and for Medicare coverage as a Medicare-Qualified Government Employee. This matter is now before the Court for consideration of *Plaintiff, Regina M. Grenauer Statement of Errors*, ECF 10 ("*Statement of Errors*") and *Defendant's Memorandum in Opposition*, ECF 16 ("*Commissioner's Response*"). No reply has been filed.

**I. Background**

Plaintiff Regina M. Grenauer filed her application for benefits on March 15, 2011, alleging that she has been disabled since May 15, 2003. *PAGEID* 274-278. The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge. *PAGEID* 155-157, 161-163, 168-169.

An administrative hearing was held on May 9, 2013, at which plaintiff, represented by counsel, appeared and testified, as did John

1

Finch, who testified as a vocational expert. *PAGEID* 94-133.

In a decision dated July 12, 2013, the administrative law judge concluded that plaintiff was not disabled from May 13, 2003, through the date of the administrative decision. *PAGEID* 86.

Plaintiff was 47 years of age on the date of the administrative law judge's July 12, 2013 decision. *See PAGEID* 86, 102. She has a limited education, is able to communicate in English, and has past relevant work as an attorney. *PAGEID* 84-85. Plaintiff was last insured for disability insurance purposes on December 31, 2005, and her insured status for Medicare benefits expired on December 31, 2010. *PAGEID* 75. She has not engaged in substantial gainful activity her alleged onset date of May 15, 2003 through December 31, 2010. *PAGEID* 75-76.

## II. Evidence of Record[1]

On May 16, 2003, plaintiff suffered a severe traumatic brain injury as a result of a fall down stairs in her home. *PAGEID* 376, 398, 404. CT scans at the time of her injury revealed a subarachnoid hemorrhage in the foramen magnum, basilar skull fracture, and bilateral frontal contusions. *Id*. Following her initial hospitalization, plaintiff underwent inpatient rehabilitation until June 6, 2003, and then outpatient rehabilitation at the Neurological Rehabilitation Program at the Northeast Health Center. *PAGEID* 376.

Plaintiff began treating with Deidre D. Redd, M.D., a

---

[1] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors.*

rehabilitation specialist, in May 2003. *PAGEID* 395, 399. In February 2004, Dr. Redd diagnosed plaintiff with a traumatic brain injury, resulting in a seizure disorder and problems in communication. *PAGEID* 395-97. According to Dr. Redd, plaintiff's injuries rendered her unable "to effectively work as an attorney. It is my opinion she is, at this time, permanently disabled to perform her duties." *PAGEID* 395.

Plaintiff was examined by Ken Bain, Ph.D., a neuropsychologist, in November 2003 upon referral by Dr. Redd. *PAGEID* 376-383. On testing, plaintiff achieved a verbal IQ score of 92 (30th percentile), a performance IQ score of 104 (61st percentile), and a full-scale IQ score of 97 (42nd percentile). *PAGEID* 377-378. Dr. Bain noted a severe problem with dysnomia and a significant reading disability as a result of the injury. *PAGEID* 378. Dr. Bain diagnosed organic personality syndrome, secondary to traumatic brain injury, and a reading disorder, secondary to traumatic brain injury. *PAGEID* 380. According to Dr. Bain, plaintiff's "cognitive and neurobehavioral deficits were obstacles to the performance of her job duties." *PAGEID* 382.

Plaintiff presented to William E. Carroll, M.D., a neurologist, for evaluation of her seizures on February 5, 2004. *PAGEID* 566-568. Dr. Carroll concluded that her seizures were not under control and advised that she maximize her Trileptal treatment. *PAGEID* 567-568.

Leslie A. Friedman, M.D., a neurologist, consultatively evaluated plaintiff on April 7, 2004, at the request of the state pension

system.  *PAGEID* 398-401.  Plaintiff reported various cognitive difficulties and intermittent seizures.  *PAGEID* 398-399.  On examination, plaintiff was alert, oriented, and appropriate.  *PAGEID* 400.  Dr. Friedman noted some degree of cognitive and language dysfunction.  *Id*.  Based on his examination and a review of her history, medical records, and current complaints, Dr. Friedman opined, "Noting [plaintiff's] previous employment as an attorney and noting the obvious cognitive demands of an attorney, it becomes quite apparent that she can no longer function at this level." *Id*.

On August 23, 2005, Marjorie C. Gallagher, M.D., completed a psychiatric evaluation for the state pension system.  *PAGEID* 542-546.  Dr. Gallagher reported that plaintiff had experienced grand mal seizures at least once per week until she was stabilized with medication during the summer of 2004.  *PAGEID* 542.  Plaintiff's only seizure since that time occurred in December 2004 when she forgot to take her medication.  *Id*.  Plaintiff reported that she had begun psychiatric treatment and psychotherapy five years earlier, *id*., and last saw a psychiatrist seven months earlier. She continued with counseling once per week, although she reported that she "is not getting anywhere."  *PAGEID* 542-43.  Plaintiff also reported a history of alcohol abuse but denied current abuse. *PAGEID* 544.  Dr. Gallagher diagnosed dementia due to head trauma, depressive disorder, NOS, and alcohol dependence in full sustained remission.  *PAGEID* 545.  Dr. Gallagher reported that plaintiff's documented disturbance in executive functioning would significantly impact her ability to work

4

effectively as an attorney. *Id*. Considering the severity and refractory nature of plaintiff's dementia, Dr. Gallagher opined, plaintiff remained disabled and unable to work as an attorney. *PAGEID* 546.

On February 19, 2007, James Youngman, M.D., completed a psychiatric evaluation for the state pension system. *PAGEID* 583-585. Plaintiff reported that her mood remained depressed and that having to negotiate stairs triggered episodes of post-traumatic stress disorder. *PAGEID* 584. Plaintiff denied suicidal or homicidal ideation. *PAGEID* 585. Dr. Youngman diagnosed a mood disorder due to a closed head injury. *PAGEID* 545. According to Dr. Youngman, plaintiff was presently disabled from a psychiatric point of view and could return to her position as a prosecuting attorney. *Id*.

On April 21, 2008, Robert M. Hess, M.D., performed a consultative examination of plaintiff. *PAGEID* 586-587. Clinical examination revealed continued "intellectual dysfunction." *PAGEID* 586. Dr. Hess agreed with Dr. Youngman's diagnoses of a mood disorder secondary to closed head injury as well as closed head injury with history of subarachnoid hemorrhage and basilar skull fracture and frontal contusion seizure disorder. *Id*. Based upon plaintiff's reports of persistent seizures, difficulty with cognition, and intellectual function, Dr. Hess opined that plaintiff "is disabled." *PAGEID* 597.

Talya Greathouse, M.D., plaintiff's primary care physician, performed a medical assessment and mental functioning capacity assessment on January 17, 2011. *PAGEID* 677-681. According to Dr.

Greathouse, plaintiff was moderately limited in her ability to push/pull and bend; she was not significantly limited in her ability to see; and she had no limitations in her ability to reach, handle, engage in repetitive foot movements, and in her ability to hear and speak. *PAGEID* 678. Plaintiff was extremely limited in her ability to remember locations and work-like procedures and to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *PAGEID* 679. Plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out very short and simple instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. *Id.* Plaintiff's "significant cognitive dysfunction" included limitations in speech and reading. *PAGEID* 680. Dr. Greathouse diagnosed closed head trauma, seizures, depression/anxiety, and alcoholism. *PAGEID* 681.

On September 28, 2012, W. Jerry Mysiw, M.D., Medical Director of the Dodd Hall and Head Trauma Rehabilitation Services, reported the following:

I have been following Ms. Grenauer since 8/31/11, for a

6

> Traumatic Brain Injury she sustained in May, 2003. Secondary to her traumatic brain injury she has chronic headache, anxiety, personality changes, binocular vision deficits, seizure, fatigue, cognitive impairments and depression.  Future visits will be required to address her sleep, executive dysfunction, and poor frustration levels with current treatment plan consisting of medication management.  I reviewed her past medical records and it is apparent that since her initial head injury she began having the identical symptoms/diagnoses that I now treat her for.  To the best of my knowledge Ms. Grenauer has been permanently and totally disabled since her initial injury.
>
> I do consider Ms. Grenauer an appropriate candidate for Social Security Benefits; she certainly meets your criteria for the allowed assistance.  It is my professional medical opinion that Mrs. Grenauer is considered to be totally disabled and will remain unable to retain remunerative employment.

*PAGEID* 1289.

### III.  Administrative Hearing and Decision

Plaintiff testified at the administrative hearing that, after her injury, she attempted to return to work as a prosecutor part-time. *PAGEID* 110.  She experienced her first seizure within one week and found it impossible to read paperwork. *Id*.  She also worked briefly as a part-time bartender in 2004 and 2005 following her injury, but could not make mixed drinks and was unable to give correct change. *PAGEID* 116-117.  She stopped working as a bartender when her seizures became worse.  *PAGEID* 118.

Trileptal helped for a while but her seizures returned after about a year. She continues to experience seizures at least once or twice per month.  *PAGEID* 105-106.  After a seizure, she experiences headaches and fatigue and has difficulty speaking, although the severity of these effects varies with the severity of the seizure.

*PAGEID* 107. After experiencing a seizure, she must remain in bed for two days; walking, even to the bathroom, is difficult. *Id*. She relies on others to help her. *Id*. If she experiences smaller seizures, she is unaware of what is going on around her and will find blood around her mouth. *PAGEID* 107-108. Following these smaller seizures, she experiences fatigue and headache. *PAGEID* 108.

Since her injury, she has been unable to read and write. *PAGEID* 109. She has difficulty with her memory. *Id*. For example, she has lost all memory of her childhood. *Id*. She becomes tired and has difficulty understanding words. *PAGEID* 109-110. Speaking is easier than reading and writing, but she forgets even common words. *PAGEID* 110-111. She has difficulty focusing on even simple television shows. *PAGEID* 111. She is able to perform such household tasks as laundry. *PAGEID* 112. Friends assist her with more difficult tasks, such as handling bills. *Id*.

Since her injury, plaintiff has also experienced double vision, which lasts for one or two hours at a time. *PAGEID* 113. She also experiences tremors in her hands and legs. *PAGEID* 114.

Plaintiff testified that, because she cannot work at any job, she also experiences depression. *PAGEID* 115. She underwent treatment for alcoholism, and denied any current use of alcohol or other substance abuse. *PAGEID* 118-120.

In a written opinion dated July 12, 2013, the administrative law judge found that plaintiff's severe impairments consist of a traumatic brain injury; a cognitive disorder; a history of seizure disorder; and

8

a history of alcohol abuse.  *PAGEID* 76.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following non-exertional limitations:  the claimant could not climb ladders, ropes or scaffolds, work around hazards such as unprotected heights or dangerous machinery, or engage in commercial driving.  Mentally, she was limited to simple, repetitive tasks in an a [sic] relatively static environment characterized by infrequent changes in duties or processes, not involving a fast assembly-line pace, strict production quotas, or more than occasional contact with co-workers and supervisors and no public contact.

*PAGEID* 78.  The administrative law judge relied on the testimony of the vocational expert to find that this RFC would permit the performance of a significant number of jobs in the national economy, including such representative jobs as laundry worker, grocery stocker, and warehouse worker.  *PAGEID* 85-86.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 15, 2003, through the date she was last insured.  *PAGEID* 86.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge erred in evaluating the opinion of her treating neurologist, Dr. Mysiw. *Statement of Errors*, *PAGEID* 1428-1431. This Court agrees.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an

10

administrative law judge is nevertheless required to determine the weight to be accorded the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

The administrative law judge gave "little weight" to Dr. Mysiw's opinions:

> The opinion of W. Jerry Mysiw, M.D., that the claimant is disabled is given little weight. First, the record indicates that Dr. Mysiw did not treat the claimant prior

11

> to June 28, 2012, when the records show that she was seen as a "new patient." There is no objective evidence to contradict this medical entry. Thus, notwithstanding his specialty in treating traumatic brain injuries, there is nothing that relates back his findings to the time prior to her DLI [date last insured]. Moreover, he cannot be considered a treating source during either period under consideration. In addition, he did not provide a specific functional assessment of claimant's limitations, simply stating that she should "avoid alcohol, excessive physical activity, heavy lifting, and stressful situations as much as practical." (Exhibit 31F).[2]

*PAGEID* 80. The administrative law judge's statement that "there is nothing that relates back [Dr. Mysiew's] findings to the time prior to her DLI" is factually inaccurate: Dr. Mysiw expressly related his findings to plaintiff's "initial injury," *PAGEID* 1289 ("[I]t is apparent that since her initial head injury she began having the identical symptoms/diagnoses that I now treat her for. To the best of my knowledge Ms. Grenauer has been permanently and totally disabled since her initial injury."). The Court therefore concludes that the matter must be remanded for further consideration of the opinions of plaintiff's treating physician, Dr. Mysiw.

Having concluded that the action must be remanded for further consideration of Dr. Mysiw's opinions, the Court need not and does not address plaintiff's remaining arguments.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that this action be remanded to the Commissioner, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further

---

[2] The Court is unable to locate this language in Exhibit 31F. *See PAGEID* 1289-1291.

consideration of the opinions of plaintiff's treating physician, W. Jerry Mysiw, M.D.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to

13

preserve an issue for appeal . . . .") (citation omitted)).

January 4, 2015                                  *s/Norah McCann King*
                                                Norah M<sup>c</sup>Cann King
                                            United States Magistrate Judge